

EVERY PRODUCT. EVERY CUSTOMER. **EVERY TIME.**

**Line 5, LLC Dealership Participation Agreement**

This DEALERSHIP PARTICIPATION AGREEMENT ("Agreement") is made this 13 day of June, 2017 (the "Effective Date"), by and between LINE 5, LLC, a Florida corporation with its principal place of business located at 5644 Tavilla Ct., Suite 102, Naples, Florida 34110 ("LINE 5"), and Castle Hills Motors LLC, a company organized under the laws of TX, with its principal place of business located at 1702 E Hwy 121, Lewisville, TX 75056. (along with any subsidiaries, divisions, affiliates, parents, representatives, partners, and/or related corporations, "Dealer").

1. **APPOINTMENT OF DEALER:** LINE 5 appoints Dealer as a NON-EXCLUSIVE dealer for the financing services provided by LINE 5.

2. **NO AGENCY RELATIONSHIP:** This Agreement does not create an agency, partnership, franchisee or joint venture relationship between the parties. Under this Agreement Dealer is only authorized to sell in its own name Products financed by LINE 5 per the terms of this Agreement.

3. **FINANCING OF PRODUCTS BY LINE 5:** All orders for financing placed by Dealer shall be in the form of a LINE 5 Installment Contract generated by the LINE 5 website ("Installment Contract"), specifying in English all of the items included therein, and may be submitted to LINE 5 only after financing for the underlying vehicle has been secured. Requests for financing submitted in any other form will not be accepted by Line 5. All Installment Contracts submitted by Dealer are subject to LINE 5's approval and acceptance. LINE 5 shall not be liable for any compensation, commission, reimbursement or damages for any delay, regardless of cause, in the rendering of services to Dealer.

LINE 5 does not offer Dealer any grace period to modify a submitted Installment Contract, and no changes will be accepted by LINE 5 once the Installment Contract is approved and accepted by LINE 5. Dealer is solely responsible for confirming the accuracy of all information contained in the Installment Contract.

Dealer Initials RNW

Line 5 Initials ________



EVERY PRODUCT. EVERY CUSTOMER. **EVERY TIME.**

Upon receipt and acceptance of any Installment Contract from Dealer, Line 5 will issue payment within 48 hours to Dealer for the Installment Contract including sales tax, less documentary stamps and the appropriate administration fee as set forth in this Agreement. LINE 5 reserves the right to deduct any refunds or proration due back to LINE 5 from Dealer from any funding payments made by LINE 5 to Dealer.

4. **PRORATED ITEMS:** If a contract for a product financed by LINE 5 ("Product") is cancelled in whole or in part at any time after LINE 5 has accepted an Installment Contract, Dealer will be responsible to reimburse LINE 5 the prorated amount remaining based upon time and/or mileage, provided the Product contract is for a minimum of 1,000 miles per month the Product contract is in existence, as well as a corresponding and proportional prorated amount of any additional funds LINE 5 has provided to Dealer. If a Product contract has a mileage limitation which equates to less than 1,000 miles per month for the life of the contract, LINE 5 will have the option to short fund the Product contract based upon the corresponding term of the Product contract such that the term fee equates to the equivalent of 1,000 miles per month. In addition, should the terms of a Product call for a reduction in the pro rata refund amount for any claims paid under the policy, Dealer agrees to disregard these terms and pay to LINE 5 the full pro rata refund without regard to the reduction of the refund amount by the amount of any claims paid.

5. **NON-PRORATED ITEMS:** This Agreement provides Dealer the right to use LINE 5's services to finance Products which are prorated in the event of early termination. If Dealer uses LINE 5's services to finance Products which are not prorated, Dealer agrees that it will refund any such Product for the original selling price, plus all applicable taxes to LINE 5. LINE 5 reserves the right to deduct the original selling price, plus all applicable taxes due back to LINE 5 from Dealer from any funding payments made by LINE 5 to Dealer.

6. **ADMINISTRATIVE FEE:** LINE 5 charges non-franchise dealers an administrative fee of no less than 15% of the retail-selling price of all financed Installment Contracts plus all applicable taxes, less the customer's down payment and documentary stamps. The administrative fee is variable as a result of the dealership buying the

Dealer Initials PNW

Line 5 Initials ________



EVERY PRODUCT. EVERY CUSTOMER. **EVERY TIME.**

rate down or extending the financed term, and will be calculated by the LINE 5 Proprietary Calculator. LINE 5 will NOT collect any administrative fees from the Purchaser under any circumstances.

7. **DOWN PAYMENT:** Dealer is responsible to collect the down payment outlined in the Installment Contract from the purchaser of the Product(s) ("Purchaser").

8. **SALES TAX:** All necessary sales tax from Products financed through LINE 5 is to be collected and paid on behalf of the Purchaser by Dealer, and Dealer is responsible for verifying the correct sales tax is being collected.

9. **ASSIGNMENT:** Upon execution of the Installment Contract, Dealer will assign the Installment Contract, in its entirety, to LINE 5. All related refunds and/or rebates from cancelled Products will be assigned to LINE 5. LINE 5 will be responsible for providing any notices to Purchaser required by applicable law with respect to the assignment of the Installment Contract to LINE 5.

10. **LIENHOLDER:** Dealer will indicate LINE 5 as the "Lienholder" in the appropriate section on all sold Products using financing by LINE 5. The "Lienholder" designation will cease once the Installment Contract has been paid in full and the Purchaser's account has been satisfactorily settled. If no "Lienholder" section is present for a Product sold using financing by LINE 5 (such as for items which are not prorated), Dealer will treat such product as thought LINE 5 were the Lienholder.

11. **PRICING:** Dealer agrees that the retail-selling price of Products will not vary depending upon whether the Purchaser chooses to finance the Product with LINE 5 or pay by other means, and Dealer may not assess incremental charges or offer discounts depending on whether the Purchaser chooses to finance the Product with LINE 5 or pay by other means.

12. **FUNDS DUE TO LINE 5:** In the event that funds are due back from Dealer to LINE 5, such as in the event of a cancelled Installment Contract, such payments shall be made to LINE 5 in full in United States dollars by check, wire transfer, or ACH to LINE 5 or a bank or banks designated in writing by LINE 5 to Dealer, or by such other means or in such other currencies or to such other address as LINE 5 may from time to time designate

Dealer Initials RNW

Line 5 Initials ________

in writing within forty five (45) days. Interest on any past due amounts shall be charged at the rate of one and one-half percent (1 1/2%) per month or the maximum amount permitted by law, whichever is higher. All costs associated with payments hereunder shall be borne by Dealer.

13. **COMPLIANCE:** Dealer is solely responsible for obtaining and having in effect all licenses, permits and authorizations from all governmental agencies necessary to the performance of its obligations hereunder and shall comply with all applicable laws, rules and regulations affecting LINE 5 and Dealer and their respective activities hereunder. Dealer shall promptly notify LINE 5 in writing (a) of any changes to or additional licenses, permits, or authorizations required by LINE 5 under the laws and regulations of the Territory as may be necessary for the performance by LINE 5 of its obligations under this Agreement, and/or (b) if this Agreement or any portion hereof is illegal under or infringes any applicable law or regulation. Dealer is responsible for notifying LINE 5 of any additions or changes to regulatory requirements in the territory where Dealer is located. Dealer shall indemnify LINE 5 against and hold it harmless from all penalties, fines, charges, liabilities or costs, including attorneys' fees and related costs, whether direct or indirect resulting from or in connection with any failure to notify LINE 5 under the preceding sentences of this Section 13 and in accordance with its terms.

14. **INTELLECTUAL PROPERTY:** Dealer acknowledges the confidential and proprietary nature and value to LINE 5 of information relating to the terms of this Agreement, and any services, computer systems, products, forms, ideas, concepts, inventions, procedures, data, know-how, trade secrets, or other matters concerning LINE 5 and its services (collectively referred to as "Confidential Information"). Dealer shall maintain the confidentiality of such Confidential Information and shall not disclose such Confidential Information, except to its employees, subcontractors, agents, and representatives who have a demonstrated need to know such Confidential Information in order to carry out Dealer's obligations under this Agreement. In the event Dealer is required to disclose Confidential Information pursuant to any legal process, or judicial or government order, Dealer shall promptly notify LINE 5 to allow intervention in response thereto.

Dealer Initials RNW

Line 5 Initials ________



EVERY PRODUCT. EVERY CUSTOMER. **EVERY TIME.**

15. **TERM; TERMINATION; EFFECT OF TERMINATION:** This Agreement shall become effective on the Effective Date and will continue for a period of two (2) years, unless terminated earlier, and shall automatically renew for one calendar year each year thereafter. This Agreement may be terminated by either party at any time for any reason whatsoever by written notice to the other party delivered not less than thirty (30) days prior to termination. Additionally, LINE 5 may terminate this Agreement with immediate effect on the giving of written notice to Dealer should LINE 5, in its sole discretion, determine that a breach of any portion of this Agreement has occurred.

Any termination of this Agreement shall operate as a cancellation of all Installment Contracts that LINE 5 has not accepted prior to the termination, and LINE 5 will not be liable to Dealer for any damages (including but not limited to consequential, special or lost profits) as a consequence of any termination or cancellation of Installment Contracts. Upon any termination of this Agreement, any and all amounts owing by Dealer to LINE 5 or from LINE 5 to Dealer shall become immediately due and payable. Termination of this Agreement will not affect existing Installment Contracts, which will remain in effect and subject to the terms of this agreement, including proration and refund provisions, after termination of this Agreement.

16. **ASSIGNMENT:** Dealer shall not assign, delegate or otherwise transfer this Agreement or all or any part of its rights or obligations hereunder, whether voluntarily or by operation of law, without the prior written consent of LINE 5. LINE 5 may, without requiring the consent of Dealer, assign, delegate or otherwise transfer this Agreement or any right hereunder, or delegate any obligation hereunder, to any person, including but not limited to any of the affiliates of LINE 5 or to any entity to which substantially all of its business is transferred by merger, consolidation, sale of assets or otherwise or which agrees to assume the obligations hereunder.

17. **GOVERNING LAW; JURISDICTION; ARBITRATION:** This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, United States of America; provided, however, that any conflict of law rules of the State of Florida, U.S.A., shall not operate to require the application of the laws of any other jurisdiction. The English text of this Agreement shall be considered the original version of this Agreement and

Dealer Initials RNW

Line 5 Initials ______



shall govern and be binding upon the parties. The controlling language for all communications between the parties shall be English.

The parties hereby irrevocably and unconditionally agree that any legal action or proceeding against either of them with respect to this Agreement and any transaction contemplated hereby shall be brought in the State or Federal courts within the State of Florida, U.S.A., and by execution and delivery of this Agreement, the parties hereby irrevocably and unconditionally submit to the jurisdiction of each such court. In the event either party brings legal action to enforce any of the terms, conditions, or revisions of this agreement, both parties agree to pay such attorney's fees as shall be awarded by a Court of competent jurisdiction to the prevailing party.

Any dispute, claim or controversy arising out of, as a result of, based upon, related to or in connection with this Agreement, or any amendment hereto, whether in contract, tort, statute or otherwise, that cannot be resolved by good faith negotiations among the parties shall be determined by final and binding arbitration in accordance with then existing arbitration rules of the American Arbitration Association. The arbitrator shall not act as "amiable compositeurs" and shall not have the authority or power to modify or alter any express condition or provision of this Agreement. Recovery of punitive, exemplary, statutory or liquidated damages will not be awarded and are waived, except an award may be made by the arbitrator for recovery for breach of warranty, products liability, or tort claims based upon the liability of Dealer or LINE 5. All costs and administrative expenses of arbitration, except attorneys' fees and costs, shall be shared equally by the parties. The arbitration will be conducted in the English language and held confidential by the parties and the arbitrator. Best efforts will be made to complete the arbitration within six months from the date of the arbitrator's appointment. The arbitral award and determination may be entered in any court having jurisdiction. An arbitral award, if any, will be granted in US Dollars.

18. **INSURANCE; INDEMNITY:** Prior to commencing performance, Dealer shall transmit to LINE 5 a Certificate of Insurance affirming that Dealer has secured the following insurance and minimum coverage amounts with an A or better (or equivalent) rated insurance company, occurrence form only: (a) general liability, including

Dealer Initials FNW

Line 5 Initials ________



EVERY PRODUCT. EVERY CUSTOMER. **EVERY TIME.**

products liability, contractor's protective liability, products-completed operations and blanket contractual liability for both personal injury and property damage with general aggregate combined single limits of US $1 million per occurrence, with such self-insured retention ("S.I.R.") as it customarily maintains in the normal course of its business, which may be satisfied by any combination of primary liability and umbrella or excess liability coverage. Certificates shall bear an inked or stamped signature. Facsimile or photocopied Certificates shall not be acceptable.

Dealer will defend, indemnify and hold harmless LINE 5 and each of its shareholders, affiliates, directors, officers, employees, insurers, successors, assigns, affiliates, divisions, parents, agents and contractors, free and harmless from and against any and all loss, cost, liability, claims, actions demands, damages, causes of action, remedies, debts, liabilities, judgments, settlements, expenses compensations and disputes or lawsuits asserted or prosecuted by a third party (including governmental or tax authority), including reasonable attorneys' fees and costs, arising out of, based upon, related to or in connection with (i) a breach or alleged breach by Dealer, or its shareholders, affiliates, directors, officers, employees, insurers, successors, assigns, agents and contractors, of any warranty, representation, or covenant under this Agreement; or (ii) Dealer's alleged negligence, breach of warranty, breach of contract, unfair business practices, unfair competition, products liability, strict liability in tort or other tort claim. LINE 5 will cooperate with Dealer in the defense. Dealer will not consent to the entry of any judgment or enter into any settlement without LINE 5's prior written consent, which will not be unreasonably withheld. Dealer's duty to defend is independent of its duty to indemnify and its other obligations under this Agreement. Dealer's duty to defend LINE 5 shall not be discharged until all indemnified matters have been resolved by settlements or by final judgments.

19. **MISCELLANEOUS:** Dealer agrees to permit, during reasonable business hours, LINE 5, or its designee, to examine, audit, reproduce and take copies of all reports, accounts and records pertaining to the financing of Products by LINE 5, including, but not limited to, records in support of claims for reimbursement or credit from LINE 5, and Dealer shall cooperate fully with any such action by LINE 5.

Dealer Initials ________

Line 5 Initials ________



EVERY PRODUCT. EVERY CUSTOMER. **EVERY TIME.**

Entire Agreement. This Agreement consists of these terms and conditions, all Attachments, and any written notices from Dealer specifically accepted in writing by LINE 5, and any documents incorporated by reference in this Agreement, and is the exclusive and entire agreement between LINE 5 and Dealer. This Agreement replaces, supersedes and cancels all prior agreements between Dealer and LINE 5 and/or any of LINE 5's affiliates, whether written, oral or implied relating to the subject matter hereof, which agreements shall have no further force and effect from the Effective Date.

Notices. All notices and other communications hereunder shall be in writing and delivery shall be effective in all respects on the date of receipt thereof by the party to whom sent, by mail or hand delivered to LINE 5, LLC, Attention: URGENT NOTICES, 5644 Tavilla Ct., Suite 102, Naples, Florida 34110, U.S.A. or if to Dealer at the address and numbers indicated above. Dealer will supplement and correct the information contained herein as such information may change.

Severability. Should any part of this Agreement be deemed invalid or unenforceable, it shall not constitute an invalidation or unenforceability of any other part of this Agreement, which shall otherwise remain in full force and effect; and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was severed and omitted.

Force Majeure. Neither party shall be liable hereunder for damages which may result from any delay or failure in performance due to acts of God or public authorities, war and war measures, civil unrest, fire, epidemics or labor disputes or other acts beyond the reasonable control of the party.

Amendment; Waiver. No modification of, revisions to or amendment of this Agreement shall be valid unless in writing signed by both LINE 5 and Dealer. To avoid confusion, no past practice or course of dealing between the parties, industry standard or practice, or usage of trade will constitute a modification or amendment of this Agreement. Neither party shall be deemed, by any act or omission, to have waived any of its rights or remedies unless such waiver is in writing and signed by the waiving party, and then only to the extent specifically set

Dealer Initials RNW

Line 5 Initials __________



EVERY PRODUCT. EVERY CUSTOMER. **EVERY TIME.**

forth in such writing. A waiver with reference to one event shall not be construed as continuing or as a bar to or waiver of any right or remedy as to a subsequent event.

Successors And Assigns. All of the terms, covenants, agreements and conditions contained in this Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors, permitted assigns and legal representatives unless prohibited by this Agreement.

Third Party Beneficiaries. This Agreement is entered into solely between LINE 5 and Dealer and, subject to the Indemnity provisions above, this Agreement will not be deemed to create any rights in third parties or create any obligations of a party to any third party.

Survival. The following clauses, including all subsections thereof, of this Agreement will survive in perpetuity cancellation, termination, completion or expiration of this Agreement: "Compliance", "Intellectual Property", "Term; Termination; Effect of Termination", Insurance; Indemnity", "Severability", "Successors And Assigns", and "Survival".

Authority. The persons signing this Agreement represent and warrant that they have been duly authorized to execute this Agreement and thereby bind the parties to the terms of this Agreement.

Counterparts. This Agreement may be executed in one or more counterparts or by electronic or facsimile signature, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

20. **CHANGES TO FINANCING TERMS:** LINE 5 reserves the right, as it sees fit in its sole discretion, to from time-to-time, amend, supplement or otherwise change the Products it will finance and/or the terms of its financing, and shall provide at least thirty (30) days prior written notice of any such changes to Dealer.

Dealer Initials ______

Line 5 Initials ______



Exhibit A Page 10 of 10

EVERY PRODUCT. EVERY CUSTOMER. **EVERY TIME.**

**IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Agreement on the date first above written at the places indicated below.**

| LINE 5, LLC | Castle Hills Motors LLC |
|---|---|
| | Dealer |
| Signed By | Signed By |
| | Ryan Weiss |
| Print Name | Print Name |
| | Managing Member |
| Title | Title |
| | 06/13/2017 |
| Date | Date |

Dealer Initials RNW

Line 5 Initials ________

P.O. Box 112737, Naples, FL 34108
p. 844 775 4635 f. 239 631 2331

WWW.LINE5.COM

4835-5021-9079.1 / Page 11