Areya Holder Aurzada
State Bar No. 24002303
HOLDER LAW
901 Main Street, Suite 5320
Dallas, TX 75202
Telephone: (972) 438-8800
Email: areya@holderlawpc.com

COUNSEL FOR RYAN NICHOLAS WEISS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| RYAN NICHOLAS WEISS | § | CASE NO. 21-31701-HDH |
| | § | |
| Debtor | § | Chapter 11 |
| | § | |

## DEBTOR RYAN NICHOLAS WEISS' PLAN OF REORGANIZATION AND DISCLOSURES CONTAINED HEREIN

THIS PLAN IS SUBMITTED TO ALL NOTICING PARTIES AND CREDITORS OF THE DEBTOR ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS PLAN IS INTENDED TO PROVIDE ADEQUATE INFORMATION AND DISCLOSURES AS REQUIRED BY THE BANKRUPTCY CODE.  ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN AND DISCLOSURES CONTAINED HEREINWITH CARE.  THE PLAN HAS NOT YET BEEN APPROVED BY THE COURT.

## ARTICLE I

### INTRODUCTION AND SUMMARY OF PLAN

Ryan Nicholas Weiss (the "Debtor") is an individual who owns and operates a consulting business, Flex Capital Investments, LLC ("Flex Capital").  Flex Capital previously operated a Buy Here–Pay Here ("BHPH") used car dealership that shut down primarily due to the COVID-19 pandemic and the resulting economic fallout.  Most of the debts in the Plan stem from the debts incurred and Debtor's personal guarantees associated with the operations of the used car dealership.

Debtor has filed this Plan of Reorganization (the "Plan") because, in Debtor's view, no

other feasible plan can be proposed to resolve the claims against the Debtor.  The Plan provides for structured payments to holders of Allowed Claims against the Debtor over a maximum five-year period.  In accordance with the Plan, Debtor will continue to operate Flex Capital.

## ARTICLE II

## BACKGROUND

A.      Debtor's Bankruptcy Filing.

On September 23, 2021, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Code (the "Bankruptcy Code"). Pursuant to 11 U.S.C. §101(51D), Debtor elected to proceed under Subchapter V, which provides for the appointment of a trustee to assist in, among other things, the development of a consensual plan, account for the debtor's property, and investigate the Debtor's business.  On September 28, 2021, Scott Seidel was appointed as the Subchapter V Trustee.

The Debtor's bankruptcy filing was caused primarily by the COVID-19 pandemic and the devastating impact on the business operations of the used car dealership.  Debtor had personal guarantees on most if not all of the liabilities of the used car dealership, and Debtor was unable to perform on those guarantees. Due to these liabilities and the substantial loss of revenues further described herein, Debtor filed and sought protection under the Bankruptcy Code to restructure his obligations.

B.      Post-petition Operations.

After Debtor filed this Chapter 11 Case, he has continued to operate and manage Flex Capital.

C.      Debt Repayment and Restructuring.

In general, the Plan proposes to pay the holders of Allowed Claims from income generated from Flex Capital over a maximum five-year period.

Debtor has prepared projections for the next five years, and those projections are attached hereto as Exhibit A.

## ARTICLE III

## NATURE AND STATUS OF DEBTOR'S BUSINESS

Debtor is an individual who operates a consulting business under the name of Flex Capital Investments, LLC. Under Flex Capital, Debtor works as a corporate finance/tax consultant. Debtor is the sole member and 100% owner of Flex Capital.

In addition to providing a vehicle for Debtor's consulting work, Flex Capital is the sole

member and 100% owner of Castle Hills Motors, LLC ("Castle Hills Motors"). Flex Capital is also a 70% owner of Castle Hills Financing, LLC ("Castle Hills Financing") and the managing member.  Neither Castle Hills Motors nor Castle Hills Financing are currently operating.

## ARTICLE IV

### HISTORY OF THE EVENTS LEADING UP TO BANKRUPTCY

Debtor is a corporate finance/tax consultant. In addition, Debtor has been in the independent used car industry since 2012.  In 2012, Flex Capital formed Castle Hills Motors and began operating a used car dealership in Lewisville, Texas.  Flex Capital is the sole member and 100% owner of Castle Hills Motors.  The business model for Castle Hills Motors was premised upon in house financing via BHPH promissory notes.

In order to grow and fund business operations, Debtor used personal capital and external private equity capital to fund Castle Hills Motors' purchase of vehicles and sell to customers for in house financing.  This combined capital was how Castle Hills Financing was established.  Castle Hills Financing is 70% owned by Flex Capital, 10% owned by the Debtor's two minor children, 5% owned by Ryan Brown and 5% owned by Greg Jedrusiak.

Castle Hills Financing's main function was to partially purchase Castle Hills Motors' BHPH notes to allow Castle Hills Motors' cash flow to remain positive and give Castle Hills Motors the ability to grow quickly. Castle Hills Motors grew rapidly during the first seven years of existence.

Over the years, the strategy of the dealership shifted to better, more expensive vehicles and less BHPH financing, replaced with significantly more outside financing and cash sales.  At its peak, Castle Hills Motors employed approximately 15 full time contractors and several part time individuals.

In early 2019, Mr. Weiss and his wife separated and a divorce subsequently ensued.  The divorce was finalized in July of 2019 which resulted in 50% custody of his two daughters (10 and 13 years old). Mr. Weiss rotates custody on a weekly basis and covers 50% of the children's overall costs.

In March of 2020, the COVID pandemic struck and devastated the business operations of Castle Hills Motors and Castle Hills Financing.  Most of the BHPH customers stopped making payments and sales plummeted as the state and country decided how to best deal with the pandemic from a store retail store front prospective. Castle Hills Motors cut staff levels dramatically in March of 2020, but the dealership had very large inventory levels at the time the pandemic protocols rolled out and when business came to a grinding halt.  Unfortunately, many of the pandemic benefits such as PPP loans were not available to Castle Hills Motors because all individuals working at the dealership were paid as independent contractors as opposed to W-2 employees.

Large monthly fixed costs, private equity debt payback, private equity debt interest payments and automotive floor plans quickly ate up all cash reserves Castle Hills Motors had

established over the first seven years in business. Sales levels were 35-70% lower than the comparable 2019 results during the pandemic period. The Debtor attempted to secure liquidity for Castle Hills Motors from a variety of sources including personal credit card advances from the Debtor's credit cards, business merchant cash advances for Castle Hills Motors and additional private equity advance inquiries. High interest and additional debt service added by these liquidity options secured magnified the problem of being able to keep up with monthly expenses.

After exhausting all of the Debtor's personal liquidity reserves and external private equity loan opportunities, Castle Hills sold its assets on November 30th, 2020 in an effort to salvage any remaining value related to Castle Hills Motors or Castle Hills Financing[1]. The sale was to Dennis Auto Investments, LLC ("Dennis Auto"), and Mr. Weiss' father is the 100% owner of Dennis Auto. The sale was recommended by LMN Consulting, LLC, an unrelated third party that previously worked in the auto industry. The strategy for the sale was to rebrand Castle Hills Motors under new ownership and new management in an effort to revamp the business operations and rebrand the company. LMN would take over the management and control of Castle Hills Motors and work to collect the delinquent BHPH notes. The sale to Dennis Auto was an asset sale in the form of a promissory note, and the Debtor signed on as a consultant for the new dealership to help ensure the promissory note would be paid.

Unfortunately, LMN has not performed as expected, and the new company Dennis Auto has continued to struggle and lose money every month. It was at this point that Mr. Weiss finally decided that personal bankruptcy was his only remaining option. On September 23, 2021, the Debtor filed for bankruptcy relief under Chapter 11.

## ARTICLE V

### POST-PETITITON OPERATIONS AND DISCLOSURES PERTAINING TO INSIDERS AND MANAGEMENT OF THE REORGANIZED DEBTOR

Debtor is continuing to work as a Corporate Finance/Tax Consultant under Flex Capital. Mr. Weiss has solely owned and operated Flex Capital since 2006. By and through Flex Capital, Debtor receives approximately $6,250.00 per month.

After working for months without a paycheck from Dennis Auto, Debtor has recently started receiving $1,000 week from Dennis Auto for consulting and assisting with the business operations. Debtor does not have an ownership interest in Dennis Auto, but Dennis Auto is owned by the Debtor's father.

Prior to and since this bankruptcy filing, Debtor has drastically reduced his monthly expenses. Debtor went from a $3,400 per month lease on a 3,200 square foot home to a $2,200 per month lease on a 1,950 square foot home. Mr. Weiss has also eliminated all non-essential monthly costs such as landscaping costs housekeeping and vacations. In addition, Debtor is now operating on a cash system and is not incurring any additional debt.

---

1 Prior to the sale, Castle Hills solicited offers for the sale of its assets, and the highest offer it received was $25,000.00.

## ARTICLE VI

I.    TREATMENT OF CLAIMS

**Class 1:**

A.    <u>Administrative Claims</u>: (Class 1) – In connection with the administration of this Chapter 11 Case, the Debtor has incurred administrative fees to the Subchapter V Trustee and Debtor's counsel.  Debtor estimates the outstanding attorney's fees will be approximately $5,000.00 after the application of the Firm's remaining retainer.  In addition, the Debtor estimates the fees for the Subchapter V Trustee will be a maximum of $5,000.00.

The holder of an Administrative Claim, other than administrative claims filed by governmental units, shall be paid, to the extent allowed by the Court, in full in cash on or before the later of (a) ten (10) days following the Effective Date or (b) ten (10) days following the date on which the Administrative Claims are Allowed by a Final Order of the Court. For purposes of payment of administrative expenses, any administrative claimant, other than governmental units, desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty (30) days after the entry of an Order confirming the Plan except as otherwise provided under 11 U.S.C. §503(b)(1)(D).

B.    <u>Professional Fee Claims</u>.  Each Professional employed pursuant to Section 330 of the Code and/or appointed pursuant to Subchapter V shall file their final Fee Application with the Court within sixty (60) days after the Effective Date, unless the Court orders otherwise.  Service of a final Fee Application or notice related to a final Fee Application shall be promptly made to the Reorganized Debtor and parties requesting notice in this case. Objections to any Professional Fee Claims by any party in interest shall be filed and served not later than twenty (20) days after filing and service of a Final Fee Application or service of a notice related to a Final Fee Application. As set forth above, Debtor estimates the outstanding attorney's fees will be approximately $5,000.00 after the application of the Firm's remaining retainer.  In addition, the Debtor estimates the fees for the Subchapter V Trustee will be a maximum of $5,000.00.

The Class 1 Claims are not impaired.

**Class 2:**

C.    <u>All Allowed Secured Claims of Lewisville ISD and Denton County:</u> (Class 2) – Debtor estimates the allowed secured claims of Lewisville ISD and Denton County at zero, and Debtor's Plan does not provide for payment of these claims.  Upon information and belief, the claims asserted by Lewisville ISD and Denton County are owed by Castle Hills Motors, which is owned by Castle Hills Finance. In the event Lewisville ISD and Denton County are determined to hold an allowed unsecured claim against the Debtor, Lewisville ISD and Denton County will be treated and paid in accordance with other unsecured creditors as set forth in Class 3.

The Class 2 Claims are impaired.

**Class 3:**

D.    <u>All Allowed Unsecured Claims – (Class 3)</u>

A Class 3 Claimant holding an Allowed Unsecured Claim shall be paid a pro rata share of $90,000.00 over a term of sixty (60) months. Payments to an allowed Class 3 Claimant will begin within thirty (30) days of the Effective Date of the Confirmed Plan. The combined monthly payment to all allowed, unsecured creditors will be $1,500.00 per month.

Based on Debtor's Schedules, Debtor has approximately $2,309,980.66 in general unsecured claims. Debtor estimates the dividend to unsecured creditors will be approximately four percent (4%) of each creditor's allowed unsecured claim.

The Class 3 claims are impaired.

**Class 4:**

E.    <u>All Allowed Unsecured Convenience Claims</u>: (Class 4) – On or before, but no later than twenty (20) days after the Effective Date, the holder of any Allowed General Unsecured Claim who is scheduled to receive a pro rata distribution in excess of $500.00 may elect to reduce the holder's Allowed Claim and total pro rata distribution to $500.00, after which the Allowed Claim shall be treated as a Convenience Claim. Allowed Convenience Claims shall be paid in full within 30 days after the Effective Date.

The Class 4 claims are not impaired.

## II.    CLASSIFICATION AND VOTING

A.    Creditors Divided into Classes.

The Bankruptcy Code requires that creditors be divided into classes in the Plan. That is, creditors with similar legal rights are put into the same class.

B.    Creditors' Right to Vote on the Plan.

In a Chapter 11 reorganization, generally, creditors who are impaired under a Plan have the right to vote on a Plan. In this Chapter 11 Case, most if not all creditors' claims are impaired under this Plan. All creditors should read this Plan carefully, discuss it with an attorney and consider how to vote on the Plan.

The Court will conduct the Confirmation Hearing in this Chapter 11 Case to decide whether to confirm the Plan on December 21, 2021 at 1:30 p.m. at the United States Bankruptcy Court, 1100 Commerce Street, 14th Floor, Courtroom #3, Dallas, TX 75242.

Ballots will be mailed by and should be submitted to the Balloting Agent as follows:

Areya Holder Aurzada
Holder Law
901 Main Street, Suite 5320
Dallas, Texas 75202
amy@holderlawpc.com

The Voting Deadline is December 14, 2021 on or before 5:00 p.m.

C.     Creditors Have the Right to Object to the Confirmation of the Plan.

If a creditor believes that the Plan does not meet the requirements of the Bankruptcy Code, the creditor may file a written objection with the Bankruptcy Court. The Objection Deadline has been set for December 14, 2021 at 5:00 p.m.  The Court will consider only written objections that are timely filed and ballots that are timely filed. If no objections are filed (or if all objections are overruled by the Court), the Court may approve the Plan. If the Court approves the Plan, all creditors will be bound, even if a creditor did not vote and even if a creditor voted against the Plan. This means that a creditor will not be allowed to collect its claim against the Debtor except as provided in the Plan.

D.     Plan Acceptance.

Each class of Claims is considered separately for voting. Only the creditors who vote are counted. The Court will conclude that the class "accepts" the Plan if two requirements are met: (1) More than 50% of the voting creditors vote in favor of the Plan; and (2) those creditors voting in favor of the Plan hold at least 2/3 of the total amount of the debt that vote in such class.

E.     Cramdown.

If any class of Claims shall fail to accept the Plan in accordance with section 1126 of the Bankruptcy Code, the Bankruptcy Court may still confirm the Plan in accordance with sections 1129 and 1191 of the Bankruptcy Code and in particular the provisions set forth under Subchapter V.

F.     Classification and Impairment of Claims Under the Plan.

Class 1: Administrative and Professional Fee Claims - Administrative

This class is comprised of administrative claimants and professional fee claims. Class 1 is not impaired.

Class 2: All Allowed Secured Claims of Lewisville ISD and Denton County - Secured

This class is comprised of secured claims asserted by Lewisville ISD and Denton County. Class 2 is impaired.

**EXHIBIT B**

 Class 3: Allowed General Unsecured Creditor Claims - Unsecured

This class is comprised of unsecured claims as more particularly set forth in Debtor's Schedules and the claims register on file in the case.  Class 3 is impaired.

Class 4: Allowed Unsecured Convenience Creditor Claims - Unsecured

This class is comprised of allowed unsecured claims that have elected to be treated as Convenience Claims. Class 4 is unimpaired.

## III.    MEANS FOR IMPLEMENTATION AND DISCLOSURES

A.    Continued Operations.

The Reorganized Debtor will continue to perform work in accordance with ordinary business practices.  Attached to this Plan as *Exhibit A* are Debtor's projections for the next five years which Debtor believes will permit him to make the payments contemplated by the Plan.

B.    Disbursing Agent's Duties and Responsibilities.

The Reorganized Debtor shall act as "Disbursing Agent" and be responsible for making the disbursements provided for in this Plan. The Disbursing Agent may make such disbursement in the manner in which he deems reasonable and appropriate. To effectuate the payments under the Plan, the Disbursing Agent may utilize bank accounts as he determines is reasonable under the circumstances including using the Debtor's existing bank accounts, or a special trust account.

C.    Executory Contracts or Leases.

This Plan constitutes a motion, pursuant to Bankruptcy Code § 365[a] to assume all Contracts, except those expressly rejected by the Debtor, in writing, at or prior to the Confirmation Hearing.

***The following contracts are expressly assumed by the Debtor:***

- Real estate lease with Kristina Beagle.  The lease payments on the home are $2,400 per month, and Debtor is current on the payments.
- Storage Lease with Life Storage to store miscellaneous household goods.  The lease payments are $220.00 per month, and Debtor is current on the payments.

***The following contracts are expressly rejected by the Debtor:***

- None.

If the rejection of Contracts by the Debtor pursuant to this Plan results in damages to the other party or parties to such Contracts, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor or his respective property or agents, successors or assigns, unless a proof of

**EXHIBIT B**

Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before sixty [60] days following the Effective Date.

Notwithstanding anything in the Plan, all insurance policies under which the Debtor is the insured party shall be deemed assumed as of the Confirmation Date. All payments upon such policies are current; no Cure Payments are necessary.

Entry of the Confirmation Order shall constitute a finding that the Debtor shall not owe any Cure Payment in connection with any assumed pre-Petition Date Contracts and shall constitute approval of assumptions of such Contracts pursuant to Bankruptcy Code Sections 365(a), 365(b), and 1123 of the Bankruptcy Code, unless the Confirmation Order or another order of the Bankruptcy Court specifies a different Cure Payment. Any party to assumed Contracts that contends that a Cure Payment is due shall be required to state the amount allegedly necessary to cure by filing and serving an objection on counsel for the Debtor prior to the Confirmation Hearing and stating, in its objection, with specificity, the Cure Payment that such party believes is required (with appropriate documentation in support thereof). Any party to assumed Contracts that has not timely filed with the Bankruptcy Court and served on counsel for the Debtor prior to the Confirmation Hearing an appropriate objection shall be deemed to have waived any right to further assert that any Cure Payment is due. If a timely and properly filed objection is made, the Cure Payment, if any, shall be determined, if necessary, at the Confirmation Hearing or at such other date noticed for hearing or as may be determined by the Bankruptcy Court.

D.      Vesting of Assets and Retention of Claims and Causes of Actions Against Third Parties.

The Plan contemplates a Settlement and Release of all causes of Action that have been brought or could be brought against the Debtor. The Debtor shall retain and have the exclusive right to enforce all Causes of Action including, without limitation, those under Chapter 5, and all avoidance actions under applicable non-Bankruptcy law that arose before the Effective Date. Provided that upon any subsequent conversion to a case under chapter 7, all assets vesting in the Reorganized Debtor, shall pass to the chapter 7 trustee as property of the chapter 7 estate subject to those Claims, Liens, and encumbrances as Allowed in this Plan.

PLEASE TAKE NOTICE THAT ALL CAUSES OF ACTION OF THE DEBTOR AND ITS ESTATE WILL BE PRESERVED. THE LACK OF DISCLOSURE OF ANY PARTICULAR CAUSE OF ACTION SHALL NOT CONSTITUTE, NOR BE DEEMED TO CONSTITUTE, A RELEASE OR WAIVER OF SUCH CAUSE OF ACTION, AS THE DEBTOR INTENDS FOR THE PLAN TO PRESERVE SAME FOR PROSECUTION BY THE DEBTOR AFTER THE EFFECTIVE DATE.

*Debtor further specifically preserves the right to pursue any and all claims, money, refunds, credits, rebates, grants or loans that he may be entitled to in relation to disaster relief and/or COVID-19. However, Debtor is unaware of any additional money that he is entitled to receive.*

[1]     Estimated Claims

Except as otherwise provided herein, the Court may estimate for purposes of allowance

pursuant to § 502[c], Bankruptcy Code, [i] any Contested Claim or unliquidated Claim, or [ii] any portion or part of any Claim that is, itself, unliquidated.  Any Estimation Order, to the extent it becomes a Final Order, shall determine the amount of the Allowed Claim so estimated.

[2]     Establishment of Contested Claims Reserve.  Notwithstanding any other provision of this Plan, no assets or property shall be distributed under this Plan on account of any Contested Claim.  For all Contested Claims, the Reorganized Debtor shall establish and hold, in trust, distributions to be made on account to the holders of Contested Claims [each such reserve being herein called a "Contested Claims Reserve"] with respect to each Claim for which there exists a Contested Claim, and shall place in each Contested Claims Reserve the assets and property to be distributed on account of such Contested Claims pursuant to this Plan, pending Allowance or Disallowance of such Claim.  Pending entry of a Final Order concerning a Contested Claim, the Reorganized Debtor shall pay into the Contested Claims Reserve all payments provided for under this Plan pursuant to any Allowed Claim which would have been required to be delivered to the claimant absent a Contested Claim.  Cash held in any Contested Claims Reserve shall be held in a segregated interest-bearing trust account.  To the extent practicable, the Reorganized Debtor may invest the Cash in any Contested Claims Reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment.

[3]     Determination of Contested Claims Reserve.  The Bankruptcy Court may, at any time, determine for each Claim, the amount of assets and property sufficient to fund each Contested Claims Reserve in full with respect to any such class.  The Bankruptcy Court may estimate and determine by an Estimation Order the Estimated Amount of Claims in any unsecured class for which a Contested Claims Reserve has been established.  Any unsecured claimant holding a Contested Claim so estimated will have recourse only to undistributed assets and property in the Contested Claims Reserve for the class in which such Contested Claim has been placed and not to any other assets or property, should the Allowed Claim of such claimant, as finally determined by a Final Order, exceed such Estimated Amount.

[4]     Return of Assets.  Except as otherwise provided herein, all assets and properties [and all interest payments and dividends previously paid in connection therewith] in any Contested Claims Reserve for any class of Claims remaining after the resolution of all disputes relating thereto shall be returned to the Reorganized Debtor for distribution in accordance with this Plan.

[5]     Withholding of Taxes.  The Reorganized Debtor shall withhold from any assets and property distributed under this Plan any assets and or property which must be withheld for federal, state and local taxes payable by the Entity entitled to such property to the extent required by applicable law.

E.     Distributions.

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders [or at the last known address of such a holder if no proof of Claim is filed or if the Disbursing Agent has been notified in writing of a change of address].  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing

Agent is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  After the first anniversary of the Effective Date, all unclaimed property shall revert to the Disbursing Agent or any successor thereto, and the claim of any holder with respect to such property shall be discharged and forever barred.

F.      Time Bar to Cash Payments.

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of [1] the first anniversary of the Effective Date or [2] 90 days after the date of reissuance of such check.  After such date, all claims in respect of void checks shall be discharged and forever barred.

G.      Objection Deadline.

As soon as practicable, but in no event later than sixty [60] days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.  Notwithstanding the foregoing sentence, as to any Claim which is filed after the Effective Date, an objection to such Claim shall be filed on or before sixty [60] days after the date on which such Claim is filed.

H.      No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to the disputed portion of any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim.  Payments and distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.

I.      Claims on File; No Allowance of Untimely Claims.

The Debtor is relying on the formal proofs of Claims on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan.   No informal proof of claim shall be deemed to have been filed in this Case.

IV.     RETENTION OF JURISDICTION

A.      Scope of Jurisdiction.

Pursuant to sections 1334 and 157 of title 28 of the United States Code, until the time that an order is entered closing the Chapter 11 Case, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under and related to the Chapter 11 Case and the

Plan.  Without limitation, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of this Plan:

- to modify this Plan pursuant to the Bankruptcy Rules and the Bankruptcy Code;
- to enforce and interpret the terms and conditions of this Plan;
- to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the parties provided authority under the Plan;
- to enter an order concluding and terminating the Chapter 11 Case;
- to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, or the Confirmation Order as may be necessary, consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules to carry out the purposes and intent of this Plan, including the adjustment of the date[s] of performance under this Plan in the event the Effective Date does not occur as provided herein, so that the intended effect of this Plan may be substantially realized thereby;
- to approve all Fee Claims;
- to hear and determine any causes of action arising prior to the Effective Date or thereafter or in any way related to this Plan or the transactions contemplated hereby;
- to determine any and all applications pending on the Confirmation Date for the rejection, assumption or assignment of Contracts and the allowance of any Claim resulting therefrom;
- to determine such other matters and for such other purposes as may be provided in the Confirmation Order;
- to hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals;
- to hear and enter final judgments in adversary proceedings which involve a Cause of Action retained by the Debtor;
- to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;
- to hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, or Interest;
- to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;
- to enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder including the Auction and the sale of the Auctioned Property;
- to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146, Bankruptcy Code;
- to enter Estimation Orders; and
- to enforce the injunctions in the Plan.

B.    Failure of the Bankruptcy Court to Exercise Jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to this Case, including the matters set forth in the Plan, this Plan shall have no effect upon and shall not control,

prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## V.    MISCELLANEOUS PROVISIONS

A    Discharge.

Except as otherwise provided in this Plan, entry of the Confirmation Order shall discharge all existing debts and Claims of any kind, nature or description whatsoever against the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 and 1192 of the Bankruptcy Code, including but not limited to Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and all debts of the kind specified in sections 502[g], 502[h] or 502[i] of the Bankruptcy Code, whether or not [a] a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; [b] a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or [c] the holder of a Claim has accepted the Plan.  As provided in section 524 of the Bankruptcy Code, the discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or any of its property, to the extent it relates to a Claim discharged. Notwithstanding anything to the contrary, this Section does not enjoin creditors from enforcing their rights under the Plan and does not apply to post-petition ad valorem taxes.

B.    Injunctions.

The Confirmation Order shall contain such injunctions as may be necessary and helpful to effectuate the discharge of the Debtor provided herein.  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SUCH INJUNCTION SHALL INCLUDE AN ABSOLUTE PROHIBITION FROM COLLECTING CLAIMS OR ASSERTING CONTROL OF PROPERTY OF THE ESTATE AS IT HAS REVESTED IN THE REORGANIZED DEBTOR PURSUANT TO THE PLAN IN ANY MANNER OTHER THAN AS PROVIDED FOR IN THE PLAN.  Provided however, that parties to assumed Contracts shall not be enjoined from pursuing their rights and remedies under such Contracts and may exercise their rights and remedies in accordance with the terms and conditions of such Contracts.

C.    Modification of Plan.

Modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that [a] the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and [b] the Debtor shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after the Confirmation Date and before substantial consummation, provided that [i] the Plan, as modified, meets the requirements of sections 1122, 1123 and 1191 of the Bankruptcy Code, [ii] the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code and [iii] the circumstances warrant such modifications.  A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance

or rejection.

D.    Severability.

Should the Bankruptcy Court determine that any provision of the plan is unenforceable either on its face or as applied to any claim or transaction, the Debtor may modify the plan in accordance with the Bankruptcy Code so that such provision shall not be applicable to the holder of any claim.   Such a determination of unenforceability shall not [1] limit or affect the enforceability and operative effect of any other provision of the plan or [2] require the resolicitation of any acceptance or rejection of the plan.

E.    Integration Clause.

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, creditors, and the parties in interest upon the matters herein.

F.    Contact Information:

Creditors should consult with an attorney about their rights and the responsibility in this Chapter 11 Case.

The attorney for the Debtor is:

Areya Holder Aurzada
Holder Law
901 Main Street, Suite 5320
Dallas, Texas 75202

If a creditor does not have an attorney, but still wants more information, that creditor can call the foregoing attorney directly.

H.    Setoff Rights

In the event that the Debtor has a claim of any nature whatsoever, including but not limited to a 11 U.S.C. 506[c] claim, against the holder of a Claim, the Debtor may, but is not required to, setoff against the Claim [and any payments or other distributions to be made in respect of such Claim hereunder], subject to the provisions of section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any claim that the Debtor may have against the holder of a Claim.

I.    Pre-Petition Date Lawsuits/Insurance

On the Effective Date, lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a Claim or derivative suit or representative suit brought by the Debtor or against the Debtor shall be dismissed; provided however, if an appeal or post judgment of any such matter is pending as of the Confirmation Date,

the Claim shall be determined by the court[s] in which such case is pending; provided further that if such case is reversed or remanded to the trial court, the Claim shall be asserted and finally determined by the Bankruptcy Court.

Dismissals of proceedings provided herein shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan.  All parties to any such action shall be enjoined by the Bankruptcy Court in the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions.  Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor are or were the insured party; the Reorganized Debtor shall become the insured party under any such policies. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan.

*In addition, Debtor further specifically preserves the right to pursue any and all claims, rebates, refunds, credits, money, grants or loans that he may be entitled to in relation to disaster relief and/or COVID-19. However, Debtor is unaware of any additional money that he is entitled to receive.*

J.      Post-Effective Date Fees and Expenses of Professional Persons.

Except as provided in this Plan, after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtor, related to the implementation and consummation of the Plan, provided, however, that no such fees and expenses shall be paid except upon receipt by the Reorganized Debtor of a written invoice, which invoice shall also be served upon counsel for the Debtor, and the United States Trustee, by the Professional Person seeking fees and expense reimbursement and provided, further, however, that the Reorganized Debtor may, within 10 days after receipt of an invoice for fees and expenses, request the Bankruptcy Court to determine any such request and the Bankruptcy Court shall have jurisdiction to do so.  In such event, the Bankruptcy Court shall apply the same standard for approval of fees and expenses as applied throughout the Chapter 11 Case.

K.      Bankruptcy Restrictions.

From and after the Effective Date, the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code [*e.g.*, section 363 or 364]. The Reorganized Debtor may conduct its affairs in such manner as is consistent with Entities not in bankruptcy without the need of seeking Bankruptcy Court approval.  No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor shall provide the U.S. Trustee such financial reports as the U.S. Trustee may reasonably request until the entry of a final decree. In addition, the Subchapter V Trustee shall be released from all further duties and obligations upon Confirmation of the Plan.

L.      Binding Effect.

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed [i] to constitute a waiver or release of any Claims by the Debtor, or any other Entity, [ii] to prejudice in any manner the rights of the Debtor, or any other Entity, or [iii] to constitute any admission by the Debtor, or any other Entity.

M.      Governing Law.

Unless a rule of law or procedure is supplied by federal law [including the Bankruptcy Code and Bankruptcy Rules], the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 Case, except as may otherwise be provided in such agreements, documents and instruments.

N.      Default by the Debtor.

In the event that the holder of an Allowed Claim asserts that the Reorganized Debtor is in default of its obligations under the Plan, such creditor must provide the Debtor with written notice ["Notice"] of such default to the following address: 5557 Glenview Lane, The Colony, Texas 75056.  In addition, the creditor must also provide notice to Debtor's counsel at follows:  Holder Law, 901 Main Street, Suite 5320, Dallas, Texas 75202. If the default asserted in the Notice remains uncured on the thirtieth [30th] day from the date on which such Notice is sent, the holder of such Allowed Claim may pursue any rights or remedies it may have under applicable non-bankruptcy law, whether state, federal or otherwise.

O.      Exculpations.

Neither the Reorganized Debtor, nor its agents or attorneys, shall have or incur any liability to any holder of a Claim for any act, event or omission in connection with, or arising out of, the Chapter 11 Case, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

## VI.      OTHER INFORMATION RELEVANT TO ACCEPTING OR REJECTING THE PLAN

A.      Disclosures.

The disclosures contained herein are provided pursuant to Section 1190 of the Bankruptcy Code.  The purpose of the disclosures is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

B.      Disclaimer.

NO REPRESENTATIONS CONCERNING THE PLAN ARE AUTHORIZED OTHER THAN THOSE SET FORTH HEREIN. DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEY FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE

FORWARD-LOOKING STATEMENTS ARE NOT GUARANTEES OF THE REORGANIZED DEBTOR'S FUTURE PERFORMANCE.  THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE REORGANIZED DEBTOR'S ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE DIFFERENT FROM THOSE PROJECTED, AND DEBTOR UNDERTAKES NO OBLIGATION TO UPDATE THE PROJECTIONS MADE HEREIN.  THESE RISKS, UNCERTAINTIES, AND FACTORS MAY INCLUDE THE FOLLOWING:

- DEBTOR'S ABILITY TO CONFIRM AND CONSUMMATE THE PLAN;
- THE POTENTIAL THAT THE DEBTOR MAY NEED TO PURSUE AN ALTERNATIVE TRANSACTION IF THE PLAN IS NOT CONFIRMED;
- THE DEBTOR'S ABILITY TO REDUCE ITS OVERALL FINANCIAL LEVERAGE;
- THE REORGANIZED DEBTOR'S RELIANCE ON KEY INDIVIDUALS;
- THE POTENTIAL ADVERSE IMPACT OF THE CHAPTER 11 CASE ON THE REORGANIZED DEBTOR'S OPERATIONS, MANAGEMENT, AND EMPLOYEES;
- THE RISKS ASSOCIATED WITH OPERATING THE DEBTOR'S BUSINESS DURING THE CHAPTER 11 CASE;
- CUSTOMER RESPONSES TO THE CHAPTER 11 CASE;
- GENERAL ECONOMIC, BUSINESS, AND MARKET CONDITIONS;
- A DECLINE IN THE DEBTOR'S MARKET SHARE DUE TO COMPETITION OR PRICE PRESSURE BY CUSTOMERS;
- THE DEBTOR'S ABILITY TO IMPLEMENT COST REDUCTION INITIATIVES IN A TIMELY MANNER;
- FINANCIAL CONDITIONS OF THE DEBTOR'S CUSTOMERS; AND
- THE REORGANIZED DEBTOR'S ACCESS TO CAPITAL RESOURCES;
- COVID 19 AND THE PANDEMIC

THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN (INCLUDING THE PROJECTIONS CONTAINED IN EXHIBIT A) IS UNCONDITIONALLY CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

C.    Alternatives to the Plan.

There are two alternative methods to resolving the Chapter 11 Case: conversion to a Chapter 7 or dismissal.  Debtor explored these options and consulted with counsel as to the benefit and detriment of each option.  Based on this review, Debtor believes it is unlikely that either alternative would afford creditors the returns expected pursuant to this Plan. Further, a Chapter 7 Trustee would not be able to make any distribution to creditors until all assets of the Debtor were liquidated and all claims resolved.  Chapter 7 by definition is not a reorganization and is instead a liquidation of the assets of the business.  Dismissal is not necessarily a liquidation by nature, but creditors would not receive the benefit of the devotion of Debtor's disposable income over the next 5 years.

D.    Liquidation Analysis.

In the event of conversion to Chapter 7, the Debtor's assets would be liquidated by a Chapter 7 bankruptcy trustee.  Debtor believes that in the event of an orderly liquidation of the Debtor's assets by a Chapter 7 trustee, the following analysis would dictate the results to creditors:

NONEXEMPT ASSETS

| | |
|---|---|
| Cash and Bank Accounts | $1,273.98 |
| Argo Restricted Stock | $32,003.25[2] |
| Flex Capital Investments, LLC | $0[3] |
| Tax Refunds | $53,954.00 |

---

[2] The value of the restricted stock is based upon a gross value of $42,671.00 less 25% in income tax that would be sent to the IRS upon exercise and liquidation of the stock by the holding company.

[3] The value of Flex Capital Investments, LLC is based on the two primary assets of Flex Capital – its 100% ownership interest in Castle Hills Motors and its 70% ownership interest in Castle Hills Financing:

- The value of Castle Hills Motors is based on the amount due on the promissory note and three auto receivable pools less the outstanding liabilities.  The gross value of the assets is estimated at $127,000 for the promissory notes and $100,000 for the auto receivables pools.  Debtor estimates there is a 50% chance of collection on the promissory note and the auto receivable pools.  The liabilities owed by Castle Hills Motors are in excess of one million dollars, so the Debtor estimates the value of this company at zero.
- The value of Castle Hills Financing is based on the lack of operations and assets of the business.  The company has not operated since the end of 2020, and it has no assets.

All other assets of Flex Capital have de minimis value. Flex Capital has no cash or outstanding receivables other than approximately $2,500 for the October billings. Without Debtor managing and operating Flex Capital, it would have no value as a going concern.

EXHIBIT B

| | |
|---|---|
| **Total Assets** | **$87,231.23** |

EXPENSES OF LIQUIDATION

Administrative Expenses

Chapter 11

| | |
|---|---|
| Chapter 11 Debtor's Counsel | $5,000.00 |
| Subchapter V Trustee Fees | $5,000.00 |

Chapter 7

| | |
|---|---|
| Trustee's Fee | $7,612.00 |
| Trustee's Attorney's Fees | $4,500.00 |
| Trustee's Accounting Fees | $3,000.00 |
| **Total Administrative Expenses** | **$15,112.00** |

| | |
|---|---|
| **TOTAL EXPENSES OF LIQUIDATION** | **$25,112.00** |
| **ESTIMATED PAYMENT TO UNSECURED CREDITORS** | **$62,119.23** |

**($87,231.23 in assets less $25,112.00 in liquidation expenses = $62,119.23)**

Based on the above assets and liabilities, allowed unsecured creditors would receive a substantially smaller distribution in a Chapter 7 liquidation as compared to a pro rata distribution of $90,000.00 under the Debtor's Plan. Further, no distributions in a Chapter 7 liquidation would likely be made for at least a year due to the inability to immediately liquidate the Debtor's 50% interest in the restricted stock. Further, Debtor has not received the tax refunds referenced above as it appears the Internal Revenue Service is still assessing the tax. This is in contrast with the Debtor's Plan that proposes to begin making payments to general unsecured creditors within 30 days of the Effective Date of Debtor's confirmed Plan.

VII.    DEFINITIONS

The capitalized terms used herein shall have the respective meanings set forth below:

(a)    "**Ad Valorem Taxing Claim**" shall mean any Claim of a governmental entity entitled by law to assess taxes on property based upon the value of such property which taxes are secured by a statutory Lien to secure the payment of such taxes, penalties and interest accruing thereon.

(b)    "**Administrative Claim**" shall mean a Claim entitled to priority under sections 503[b] and 507[a][1] of the Bankruptcy Code in the Chapter 11 Case of the Debtor.

(c)    "**Allowed**" when used with respect to any Claim, except for a Claim that is an Administrative Claim, shall mean [1] such Claim to the extent it is not a Contested Claim; [2] such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or [3] a Contested Claim, proof of which was filed timely with the Bankruptcy Court and [A] as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or [B] as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

(d)    "**Ballot**" shall mean the Ballot to be used by creditors to cast their votes to accept or reject the Plan.

(e)    "**Balloting Agent**" shall mean Debtor's counsel, as agent.

(f)    "**Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

(g)    "**Bankruptcy Court**" shall mean the Bankruptcy Court for the Northern District of Texas, Dallas Division.

(h)    "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

(i)    "**BHPH**" means Buy Here-Pay Here.

(j)    "**Business Day**" shall mean any day on which commercial banks are open for business in Dallas, Texas.

(k)    **"Castle Hills Motors"** shall mean Castle Hills Motors, LLC

(l)    **"Castle Hills Financing"** shall mean Castle Hills Financing, LLC

(m)    "**Cash**" shall mean legal tender of the United States of America or short-term liquid investments that are readily convertible to known amounts of legal tender of the United States of America and which present an insignificant risk of changes in value.

(n)    "**Cause of Action**" shall mean any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertible directly, derivatively, or in a representative suit, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any equitable remedy, including, without limitation, any claim for equitable subordination, equitable disallowance, or unjust enrichment; (e) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any cause of action or claim arising under any state or foreign law fraudulent transfer or similar claim.

(o)    "**Chapter 5**" shall mean chapter 5 of the Bankruptcy Code.

(p)    "**Chapter 11 Case**" shall mean the case of the Debtor commenced under chapter 11 of the Bankruptcy Code on the Petition Date.

(q)    "**Collateral**" shall mean any property of the Debtor subject to a valid, enforceable and non-avoidable Lien to secure the payment of a Claim (as defined in section 101(5) of the Bankruptcy Code).

(r)    "**Confirmation Date**" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

(s)    "**Confirmation Hearing**" shall mean the date on which the Bankruptcy Court holds the hearing[s] on confirmation of the Plan.

(t)    "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan.

(u)    "**Contested**" when used with respect to a Claim, shall mean a Claim against the Debtor [1] that is listed in the Debtor's Schedules as disputed, contingent or unliquidated; [2] that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; [3] that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court and to which an objection has been filed or [4] that is the subject of a defense provided under section 502 of the Bankruptcy Code. Notwithstanding the foregoing, after the Objection Deadline, only Claims to which an Objection has been filed shall be deemed Contested Claims.

(v)    "**Contested Claim Reserve**" shall mean the reserve accounts established pursuant to this Plan for funding Contested Claims if such Claims are ultimately allowed by Final Order and which are to be held pending resolution of Contested Claims by the entry of a Final Order allowing or disallowing such Contested Claim[s].

(w)    "**Contracts**" shall mean all executory contracts and unexpired leases as such terms are used within Bankruptcy Code section 365 to which the Debtor was a party as of the Petition Date.

(x)    "**Convenience Claim**" Shall mean any General Unsecured Claim which is Allowed in the amount of $500.00 or less, or for which the holder of such General Unsecured Claim agrees to the Allowance of such Claim in the amount of $500.00 or less.

(y)    "**Cure Payment**" shall be the monetary payments required pursuant to Bankruptcy Code section 365[b][1][A] to cure defaults under Contracts to which the Debtor is a party and which will be assumed pursuant to the Plan. Such Cure Payment shall be conclusively determined and set for all such Contracts at the Confirmation Hearing.

(z)    "**Debtor**" shall mean Ryan Nicholas Weiss.

(aa)    "**Disallowed**," when used with respect to a Claim, shall mean a Claim that has been disallowed by Final Order.

(bb)    "**Effective Date**" shall mean a Business Day selected by the Distribution Agent, as the case may be, not to exceed sixty [60] days after the Confirmation Date.

(cc)    "**Estimated Amount**" shall mean the maximum amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim [or class of Claims] against Debtor which is contingent, unliquidated or disputed, including, for the purpose of: [a] distribution under § 502[c], Bankruptcy Code; [b] determining the feasibility of this Plan pursuant to § 1129[a][11], Bankruptcy Code for purposes of its Confirmation; or [c] voting to accept or reject this Plan pursuant to Bankruptcy Rule 3018[a].

(dd)    "**Estimation Order**" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of any Claim [or class of Claims], against Debtor for any of the purposes as provided in this Plan.

(ee)    **"Fee Application"** shall mean an application of a Professional Person under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

(ff)    **"Fee Claim"** shall mean a Claim under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

(gg)    **"Final Order"** shall mean [1] an order which has been entered and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or [2] in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

(hh)    **"Flex Capital"** shall mean Flex Capital Investments, LLC.

(ii)    **"General Unsecured Claim"** shall mean any Claim against the Debtor that is not a Secured Claim, an Administrative Claim, or a Priority Claim.

(jj)    **"Interest"** shall mean any right in the Debtor represented by an "equity security," as defined on section 101[16] of the Bankruptcy Code, or any right to acquire such an "equity security."

(kk)    **"IRS"** shall mean the United States Department of Treasury or the Internal Revenue Service.

(ll)    **"Objection Deadline"** shall mean the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims.

(mm)    **"Petition Date"** shall mean September 23, 2021.

(nn)    **"Plan"** or **"Plan of Reorganization"** shall mean this Plan of Reorganization, either in its present form or as it may hereafter be altered, amended or modified from time to time.

(oo)    **"Priority Claim"** shall mean a Claim of the kind specified in section 507[a][2] – [a][10] of the Bankruptcy Code.

(pp)    **"Pro Rata Share"** shall mean the proportion that (a) the Allowed amount of a Claim in a particular Class (or several Classes taken as a whole) bears to (b) the aggregate Allowed amount of all Claims in such Class (or several Classes taken as a whole), unless this Plan expressly provides otherwise.

(qq)    **"Professional Person"** shall mean a person retained or to be compensated pursuant to section 327, 328, 330, 503[b] or 1103 of the Bankruptcy Code.

(rr)    **"Reorganized Debtor"** shall mean the Debtor, as reorganized, on and after the Effective Date.

(ss)    **"Schedules"** shall mean the Schedules of assets and liabilities and the statements of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such Schedules and statements have been or may be supplemented or amended.

(tt)    **"Secured Claim"** shall mean a Claim secured by a Lien on property of the Debtor, which Lien is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Chapter 11 Case, but only to the extent of the value of the Collateral that secures payment

**EXHIBIT B**

of such Claim.

    (uu) "**SBA**" shall mean the U.S. Small Business Administration.

    (vv) "**Substantial Consummation**" shall mean when the first payment has been made and after administrative expenses and claims objections are heard. Upon substantial consummation, the Reorganized Debtor shall file an Application for a Final Decree.

    (ww) "**Unsecured Claim**" shall mean a Claim other than a Secured Claim.

    (xx) "**Voting Deadline**" shall mean the date set by the Bankruptcy Court by which Ballots for accepting or rejecting the Plan must be received by the Balloting Agent.

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Furthermore, the Plan shall be liberally construed for the benefit of the Debtor and Reorganized Debtor regarding the interchangeableness of the term "*Debtor"* with the term "*Reorganized Debtor*" and other instances of the use "*Reorganized*."

Respectfully submitted on this 8th day of November, 2021.

By: */s/ Ryan Nicholas Weiss*
    Ryan Nicholas Weiss

                Respectfully submitted,

                By: */s/ Areya Holder Aurzada*
                        Areya Holder Aurzada
                        State Bar No. 24002303
                        HOLDER LAW
                        901 Main Street, Suite 5320
                        Dallas, Texas 75202
                        Telephone: (972) 438-8800
                        Email: areya@holderlawpc.com

**EXHIBIT B**